Proof Of Service

for the Western District Of Massachusetts, 1550 Main Street, OFFICE Of The CLERK OF COURT, Springfield, Massachusetts, thereupon the petitioner Kenneth Jackson make lawful service, by this proof, of the attached Petition Of Removal.

thereby the petitioner Kenneth Jackson (M84058) serves the original and two copies of the accompanying entitled "Petition Of Removal" to the above specified Federal District Court in Springfield, Massachusetts on this 9th, day of October, 2003, Mailed on October 22nd, 2003. the above specified service is so made by first class United States mail, postage prepaid. that service was made by petitioner delivering same original and two copies of same packaged together into the custody of a Bridgewater Treatment Center, 30 Administration Road, Bridgewater, Massachusetts 02324.

that mailing is by the indigent, pro se, resident-inmate by

~~See Definitions for:~~ Webster's ~~Third New International~~ Dictionary

Imposition: Another: Unwarranted: Uncalled-For: Curfew: Person: Public: Group: White //



procedures to be followed in any situation which threatens or may threaten the safety of persons detained therein.

Added by St.1984, c. 456, § 1. Amended by St.1991, c. 412, §§ 47, 47C.

### Historical and Statutory Notes

St.1984, c. 456, § 1, was approved Jan. 2, 1985.

St.1991, c. 412, § 47, an emergency act, approved Dec. 27, 1991, and by § 139 made effective July 1, 1992, in the first paragraph, in the first sentence, substituted "and all uniformed members of the state police" for "of the police force of the metropolitan district commission, and of the uniformed branch of the state police".

Section 47C of St.1991, c. 412, in the third paragraph, deleted "metropolitan district commission or the" following "under the jurisdiction of the".

### American Law Reports

Liability of municipality or other governmental unit for failure to provide police protection. 46 ALR3d 1084.

Civil liability of prison or jail authorities for self-inflicted injury or death of prisoner. 79 ALR3d 1210.

### Library References

**Texts and Treatises**

60 Am Jur 2d, Penal and Correctional Institutions § 208.

22 Am Jur Trials 1, Prisoners' Rights Litigation.

8 Am Jur Trials 635, Federal Tort Claims Act Proceedings § 37.

28 Am Jur Trials 307, Wrongful Death of Minor in Police Custody.

19A Am Jur Pl & Pr Forms (Rev) Penal and Correctional Institutions, Form 2.

## § 37. Accessibility of lockup to police; penalty for refusing access

Such lockups shall at all reasonable hours be accessible to the state police, sheriffs, constables and police officers for any legal and proper use; and a keeper thereof neglecting to keep it so accessible, or refusing to said officers the use of the same, shall be punished by a fine of not less than five nor more than twenty dollars.

### Historical and Statutory Notes

St.1873, c. 175, § 4.
St.1879, c. 305, § 2.
P.S.1882, c. 27, § 36.
R.L.1902, c. 25, § 43.

### Library References

Prisons ⇐4.
C.J.S. Prisons § 5.

**Comments.**
Detention facilities, see M.P.S. vol. 18A, Randall and Franklin, § 847.

### Notes of Decisions

In general 1

**1. In general**

A person arrested by a special state police officer for committing a misdemeanor or felony on the premises of a penal institution may be detained at the institution or may be taken to the nearest lockup, provided he is kept in the arresting officer's custody. Op.Atty.Gen., Aug. 3, 1940, p. 89.



Action "imposition" (means) (Unconstitutional(ity))

See Def: White, Public, Persons, formal



## § 37A. Curfews; imposition; penalties

The mayor of any city other than a city having a Plan D or Plan E form of charter, the city manager of a city having a Plan D or Plan E charter, and the selectmen of a town, hereinafter called the city or town official, may, if satisfied that a riot or other form of civil disorder is occurring or there is a danger that it may occur, and that a curfew is necessary for the public safety in such city or town, impose a curfew in all or part or parts of such city or town. Such curfew shall be imposed by a formal proclamation of the existence or threat of riot or other form of civil disturbance in the city or town and the need of a curfew to protect the public safety. Said proclamation shall be in writing and shall set forth all the conditions of such curfew. No curfew shall take effect until two hours after the issuance of the proclamation declaring the imposition of such curfew.

Such curfew may restrict or prohibit the movement or presence of persons, vehicles and animals in or on public ways and places, including areas to which the public has a right of access, and also places of amusement and entertainment, vacant lots and other open areas, provided that reasonable exceptions are made for all persons having business of an emergency nature which requires the use of public ways. When such curfew is imposed, the city or town official shall immediately use all reasonable and practicable means to inform all persons in such city or town of such curfew and its conditions, such as by the conspicuous posting of notices in public places, announcement by sound-powered voice or other such device, publication in newspapers of general circulation in such city or town and announcement over radio and television stations serving such city or town. While such curfew is in effect, its terms may be modified in any manner not inconsistent with this action by proclamation of said officials; provided, that two hours advance notice shall be given and that such modifications are publicized in the manner required in this section.

The city council or the town meeting, as the case may be, shall have the authority to revoke or modify and such curfew. Any curfew imposed by a city or town official under this section shall, unless sooner terminated by proclamation of said city or town official or by action of the city council or the town meeting or by the governor as hereinafter provided, terminate seventy-two hours from the hour it takes effect. Upon the termination of such curfew, additional curfews may be imposed in accordance with the provisions of this section.

The governor, acting under chapter six hundred and thirty-nine of the acts of nineteen hundred and fifty, as amended, or any other law granting him special powers during periods of emergency, may modify or revoke any curfew imposed under this section.

Any person knowing or having reason to know of such curfew who violates any conditions thereof shall be punished by imprisonment for not more than six months or a fine of not more than five hundred dollars, or both. Such person



1st ✓ ✓ ✓ Another ✓ #1 Another

Persons means Non-White Persons    Restrict — forbid

Public means White Persons    Prohibit — make Unlawful

Case 3:04-cv-30004-MAP Document 3-2 Filed 01/07/2004 Page 3 of 16

#2



may be arrested without a warrant and kept in custody for not more than twenty-four hours, Sundays and holidays excepted, at or before the expiration of which time he shall be taken before a proper court or magistrate and proceeded against according to law.

Nothing in this section shall be construed to limit or supersede the power of cities and towns to impose curfews by appropriate ordinances or by-laws.
Added by St.1968, c. 563.

### Historical and Statutory Notes

St.1968, c. 563, was approved July 11, 1968. Emergency declaration by the Governor was filed Aug. 1, 1968.

### American Law Reports

Validity and construction of curfew statute, ordinance, or proclamation. 59 ALR3d 321.
Validity, construction, and effect of juvenile curfew regulations. 83 ALR4th 1056.

### Law Review and Journal Commentaries

Juvenile curfews and the constitution. (1984) 97 Harv.L.Rev. 1163.

Riot control. Joseph Goldstein (1970) 50 B.U.L.Rev. (Special issue) 150.

### Library References

Comments.
Municipal powers, power to impose curfew, see M.P.S. vol. 18, Randall and Franklin, § 471.

## PUBLIC WATER SUPPLY

### Law Review and Journal Commentaries

Legal, economic and institutional barriers to water reuse in northern New England. Michael S. Baram, J. Raymond Miyares (1981-1982) 17 New Eng.L.Rev. 741.

## § 38. Purchase, development and use

A city, by a two thirds vote of its city council, ratified by a majority of the voters thereof at an election called for the purpose, or a town, by action of its selectmen, ratified by a majority of its voters present and voting thereon at a town meeting at which the voting list shall be used, may, for the purpose of supplying water to itself and its inhabitants, purchase of any municipal or other corporation the right to take water from its sources of supply or from its pipes; or may purchase its whole water rights, estates, franchises and privileges, and thereby become entitled to all its rights and privileges and subject to all its duties and liabilities; or, by its board of water commissioners or officers performing like duties, may contract with any such corporation for a supply of water. Any municipal corporation, by its water department, may make such a sale or enter into such a contract to supply water to a city or town.

A city or town having a water supply or water distributing system may develop and use any source of water supply within its limits, not already





appropriated for purposes of public water supply, and for such purpose may proceed under any laws applicable to such system as though the authority granted hereby had been contained in such laws; provided, that no source of water supply and no lands necessary for protecting and preserving the purity of the water shall be taken or used without first obtaining the advice and approval of the department of environmental protection.

Nothing in this section shall be construed as authorizing any city, town, or political subdivision which derives any part of its water supply from the Massachusetts Water Resources Authority, except in case of emergency, to use for water in contravention of any provision of the Massachusetts Water Resources Authority Act, and no such city, town, political subdivision nor any water company therein shall purchase water, except in case of emergency, from any municipality without written permission to do so by the said Authority.
Amended by St.1938, c. 172, § 2; St.1941, c. 465, § 1; St.1975, c. 706, § 90; St.1984, c. 372, § 35; St.1990, c. 177, § 99.

### Historical and Statutory Notes

St.1870, c. 93, §§ 1, 5.
St.1873, c. 255.
P.S.1882, c. 27, §§ 27, 31; c. 28, § 3.
R.L.1902, c. 25, §§ 31, 34; c. 26, § 5.

St.1938, c. 172, § 2, approved April 5, 1938, rewrote the section, which prior thereto read:

"A city, by a two thirds vote of its city council, ratified by a majority of the voters thereof at an election called for the purpose, or a town, by action of its selectmen, ratified by a majority of its voters present and voting thereon at a town meeting at which the voting list shall be used, may, for the purpose of supplying water to itself and its inhabitants, purchase of any municipal or other corporation the right to take water from its sources of supply or from its pipes; or may purchase its whole water rights, estates, franchises and privileges, and thereby become entitled to all its rights and privileges and subject to all its duties and liabilities; or, by its board of water commissioners or officers performing like duties, may contract with any such corporation for a supply of water. Any municipal corporation, by its water department, may make such a sale or enter into such a contract to supply water to a city or town.

"A city or town having a water supply or water distributing system may develop and use any source of water supply within its limits, not already appropriated for purposes of public water supply, and for such purpose may proceed under any laws applicable to such system as though the authority granted hereby had been contained in such laws; provided, that no source of water supply and no lands necessary for protecting and preserving the purity of the water shall be taken or used without first obtaining the advice and approval of the department of public health."

St.1941, c. 465, § 1, approved July 14, 1941, added the last paragraph.

St.1975, c. 706, § 90, an emergency act, approved Nov. 25, 1975, and by § 312 made effective as of July 1, 1975, substituted "environmental quality engineering" for "public health" in the second paragraph.

St.1984, c. 372, § 35, an emergency act, approved Dec. 19, 1984, and by § 73 made effective Jan. 1, 1985, in the third paragraph, substituted "city, town, or political subdivision which derives any part of its water supply from the Massachusetts Water Resources Authority" for "city or town, any part of which is within ten miles of the state house, or any water company owning a water supply system in any such city or town", deleted "domestic purposes" preceding "water in contravention", and substituted "the Massachusetts Water Resources Authority Act" for "chapter ninety-two", ", political subdivision nor any" for "or" and "said Authority" for "metropolitan district commission".

St.1990, c. 177, § 99, an emergency act, approved Aug. 7, 1990, in the second paragraph, substituted "protection" for "quality engineering".

# CHAPTER 269

## CRIMES AGAINST PUBLIC PEACE

### GENERAL PROVISIONS

Section
1. Dispensing and suppressing unlawful assembly; arresting persons.
2. Refusing or neglecting to depart or to assist in suppressing assembly or in arresting persons.
3. Neglect or refusal to exercise authority to suppress assembly.
4. Requiring aid; dispersing and suppressing assembly; seizure of persons.
5. Armed forces obeying orders for suppressing riot and dispersing and arresting persons.
6. Person killed or wounded as result of an assembly; guilt and responsibility.
7. Injury to building or vessel by persons unlawfully assembled.
8. Destruction of or damage to property by persons riotously assembled; liability of town.
9. Repealed.
10. Carrying dangerous weapons; possession of machine gun or sawed-off shotguns; possession of large capacity weapon or large capacity feeding device; punishment.
10A. Selling, giving or using silencers; confiscation and destruction.
10B. Repealed.
10C. Tear gas; use in commission of crimes.
10D. Body armor; use in commission of crime.
10E. Firearms sales, distributions or transfers; penalties; eligibility for probation, parole, furlough or work release.
10F. Illegal sale, gifts or transfer of large capacity weapons or large capacity feeding devices; punishment.
10G. Violations of sec. 10 by persons previously convicted of violent crimes or serious drug offenses; punishment.
10H. Carrying loaded firearm while under influence of liquor, marijuana, narcotic drugs, depressants or stimulant substances; punishment.
11. Printing statutes for posters; display.

TAMPERING WITH IDENTIFYING NUMBERS OF CERTAIN FIREARMS

11A. Definitions.
11B. Possession or control of firearm with serial or identification number removed or mutilated, while committing or attempting a felony; destruction.
11C. Removal or mutilation of serial or identification numbers of firearms; receiving such firearm; destruction.
11D. Repealed.
11E. Serial identification numbers on firearms.

KNIVES, AIR RIFLES, ETC.

12. Manufacturing and selling knives, slung shots, swords, bludgeons and similar weapons.
12A. Air rifles; sale to minors.
12B. Air rifles; possession by minors; shooting.
12C. Repealed.
12D. Rifle or shotgun loaded with shells or cartridges; unloaded rifle or shotgun; carrying on public way prohibited; exceptions; punishment.





Section
12E. Discharge of a firearm within 500 feet of a dwelling or other building in use; exceptions.
13. False alarms of fire.
13A. False reports to police officers.
14. Explosives or other dangerous substance or contrivance; false reports as to location.
14A. Annoying telephone calls.
15. Stink bombs; sale.
16. Arrowheads used for hunting; sale.

HAZING

17. Hazing; organizing or participating; hazing defined.
18. Failure to report hazing.
19. Copy of secs. 17—19; issuance to students and student groups, teams and organizations; report.

**WESTLAW Computer Assisted Legal Research**

WESTLAW supplements your legal research in many ways. WESTLAW allows you to

- update your research with the most current information
- expand your library with additional resources
- retrieve current, comprehensive history and citing references to a case with KeyCite

For more information on using WESTLAW to supplement your research, see the WESTLAW Electronic Research Guide, which follows the Preface.

*The section headings for Massachusetts General Laws have been editorially supplied.*

**Cross References**

Power of authority to call militia, see c. 33, § 40.

**Library References**

**Comments.**
Unlawful assembly, see Nolan and Henry, 32 Massachusetts Practice § 623.

**Forms.**
Damage resulting from riot, see Rodman, 10 Massachusetts Practice § 1308.

**United States Code Annotated**

Federally protected activities, civil rights, see 18 U.S.C.A. § 245.
Riots, see 18 U.S.C.A. § 2101 et seq.

GENERAL PROVISIONS

### § 1. Dispensing and suppressing unlawful assembly; arresting persons

If five or more persons, being armed with clubs or other dangerous weapons, or if ten or more persons, whether armed or not, are unlawfully, riotously or








tumultuously assembled in a city or town, the mayor and each of the aldermen of such city, each of the selectmen of such town, every justice of the peace living in any such city or town, any member of the city, town, or state police and the sheriff of the county and his deputies shall go among the persons so assembled, or as near to them as may be with safety, and in the name of the commonwealth command all persons so assembled immediately and peaceably to disperse; and if they do not thereupon immediately and peaceably disperse, each of said magistrates and officers shall command the assistance of all persons there present in suppressing such riot or unlawful assembly and arresting such persons.

Amended by St.1965, c. 647, § 1; St.1966, c. 158; St.1991, c. 412, § 98.

### Historical and Statutory Notes

St.1750–1, c. 17, § 1.
St.1786, c. 38, § 1.
St.1835, c. 140, § 1.
R.S.1836, c. 129, § 1.
G.S.1860, c. 164, § 1.
P.S.1882, c. 206, § 1.
R.L.1902, c. 211, § 1.

St.1965, c. 647, § 1, substituted "five" for "twelve", "ten" for "thirty", and inserted ", any member of the city, town, or state police or of the metropolitan district police,".

St.1965, c. 647, was approved Aug. 19, 1965. Emergency declaration by the Governor was filed Aug. 20, 1965.

St.1966, c. 158, approved April 12, 1966, inserted "or of the capitol police".

St.1991, c. 412, § 98, an emergency act, approved Dec. 27, 1991, and by § 139 made effective July 1, 1992, deleted "or of the metropolitan district police, or of the capitol police," preceding "and the sheriff of the county".

### Cross References

Curfews, see c. 40, § 37A.

### American Law Reports

Failure or refusal to obey police officer's order to move on, on street, as disorderly conduct. 65 ALR2d 1152.

What constitutes offense of unlawful assembly. 71 ALR2d 875.

Participation of student in demonstration on or near campus as warranting imposition of criminal liability for breach of peace, disorderly conduct, trespass, unlawful assembly, or similar offense. 32 ALR3d 551.

What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.

Prosecutions of inmates of state or local penal institutions for crime of riot. 39 ALR4th 1170.

Tort liability of college, university, fraternity, or sorority for injury or death of member or prospective member by hazing or initiation activity. 68 ALR4th 228.

### Law Review and Journal Commentaries

Regulation of demonstrations. (1967) 80 Harv.L.Rev. 1773.

Riot control. Joseph Goldstein (1970) 50 B.U.L.Rev. (Special issue) 150.

Riot control and the fourth amendment. (1968) 81 Harv.L.Rev. 625.

Riot control and use of federal troops. (1968) 81 Harv.L.Rev. 638.

Riot law. Jonathan Taylor, Jr. (1901) 13 Green Bag 379.

### Library References

Arrest ⇐63.1 to 63.3.
Riot ⇐1, 9.
Unlawful Assembly ⇐1.

WESTLAW Topic Nos. 35, 341, 396.
C.J.S. Arrest §§ 16 to 20, 38 to 42.
C.J.S. Riot §§1 to 11, 29 to 32.
C.J.S. Insurrection §§ 2 to 10, 25 to 28.
C.J.S. Unlawful Assembly §§ 1 to 3, 7.

#### Texts and Treatises

54 Am Jur 2d, Mobs and Riots §§ 1 to 3, 6.

18 Am Jur Pl & Pr Forms (Rev), Mobs and Riots, Forms 16 to 22.

1 Proof of Cases in Massachusetts § 931.





### Notes of Decisions

Assistance of persons 2
Evidence 4
Indictment 3
Riots 1

#### 1. Riots

To disturb another in the enjoyment of a lawful right is a trespass; and, if done by numbers of three or more unlawfully combined, the same act is a riot. Com. v. Runnels (1813) 10 Mass. 518, 6 Am.Dec. 148; Com. v. Porter (1854) 67 Mass. 476, 1 Gray 476; Com. v. Gibney (1861) 84 Mass. 150, 2 Allen 150.

In civil rights trial arising from allegedly unlawful arrest and use of excessive force during arrest, trial court's decision sua sponte to issue riot statute instruction over vigorous defense objection was not erroneous; arrestee himself characterized scene of first arrest as a "riot" and stated that he did not comply when ordered by police officers to leave the scene, stated that he was arrested for "not leaving fast enough," and encouraged jury to disbelieve police officers' version of events. Tatro v. Kervin, C.A.1 (Mass.)1994, 41 F.3d 9.

Application of Massachusetts riot statute to arrestee's version of events underlying claim that police officers lacked probable cause to arrest and used excessive force during arrest did not violate arrestee's First Amendment rights; charges allowed jury to find probable cause under riot statute based on arrestee's failure to comply with officers' orders to disperse yet allowed jury to find officers liable if it found that officers violated arrestee's First Amendment rights. Tatro v. Kervin, C.A.1 (Mass.)1994, 41 F.3d 9.

To convict of a riot certain socialists, parading a public street without a permit, as required by a regulation of street commissioners of the city of Boston, it was not necessary to prove parade was commanded to disperse by any of the officials named in R.L.1902, c. 211, § 1; the offense charged being a common-law riot, independent of statute. Commonwealth v. Frishman (1920) 126 N.E. 838, 235 Mass. 449.

Under R.L.1902, c. 218, § 35, and in view of §§ 21, 34, in a prosecution of certain socialist street paraders without permit for a riot, in course of which a police officer was stabbed, it was not necessary to convict of a riot, to show that the officer was stabbed by one of the paraders with a knife, or even that he was stabbed at all. Commonwealth v. Frishman (1920) 126 N.E. 838, 235 Mass. 449.

If defendants were acting in concert with others for a common unlawful purpose, that is, by force and violence to march or parade on a public street without permission, and in violation of a regulation of the street commissioners of the city, it was not necessary, to constitute a riot, that all should commit some physical act; it being enough if all were aiding and abetting by their presence, and all being guilty as principals if they were present, consenting and in a position under which they might render aid and assistance. Commonwealth v. Frishman (1920) 126 N.E. 838, 235 Mass. 449.

It is the acting in concert, the unlawful combination, which constitutes the offense of riot. Com. v. Berry (1855) 71 Mass. 93, 5 Gray 93.

#### 2. Assistance of persons

There is no statutory imposition of duty on a fire chief and his department regarding civil disturbances, or general offense against society, but police may request assistance in dispersing a riot from all persons there present and this would include firemen who were present at the scene. Op.Atty.Gen. Nov. 9, 1964, p. 124.

Where there was imminent, impending danger of a riot or other breach of the peace, the sheriff of any county could call such aid as a man of ordinary prudence, firmness and activity in such situation might think necessary to quell such riot or disturbance; or where a tumult, riot or mob actually existed or was threatened he could, under the provisions of St.1908, c. 604, § 142, issue a precept directing any commander of a brigade, regiment, battalion, corps of cadets or company within his jurisdiction "to appear at a time and place therein specified, to aid the civil authority in suppressing such violence and supporting the laws." 3 Op.Atty.Gen. 1912, p. 488.

#### 3. Indictment

Upon an indictment which charges in one count a riot and an assault and battery committed riotously, the defendant may be convicted of assault and battery only. Com. v. Hall (1886) 8 N.E. 324, 142 Mass. 454.

### Law Review and Journal Commentaries

Regulation of demonstrations. (1967) 80 Harv.L.Rev. 1773.

Riot control and the fourth amendment. (1968) 81 Harv.L.Rev. 625.

Riot control and the use of federal troops. (1968) 81 Harv.L.Rev. 638.

Riot law. Jonathan Taylor, Jr. (1901) 13 Green Bag 379.

### Library References

Riot ⟹9.
WESTLAW Topic No. 341.
C.J.S. Riot §§ 29 to 32.

1 Proof of Cases in Massachusetts § 931.

**Texts and Treatises**

54 Am Jur 2d, Mobs and Riots §§ 1 to 3, 6.

18 Am Jur Pl & Pr Forms (Rev), Mobs and Riots, Forms 16 to 22.

## § 4. Requiring aid; dispersing and suppressing assembly; seizure of persons

If any persons who are so riotously or unlawfully assembled, and who have been commanded to disperse, as before provided, refuse or neglect to disperse without unnecessary delay, any two of the magistrates or officers before mentioned may require the aid of a sufficient number of persons, in arms or otherwise as may be necessary, and shall proceed, in such manner as they deem expedient, forthwith to disperse and suppress such assembly, and seize and secure the persons composing the same, so that they may be proceeded with according to law.

### Historical and Statutory Notes

St.1750–1, c. 17, § 2.
St.1786, c. 38, § 3.
St.1835, c. 140, § 3.
R.S.1836, c. 129, § 4.
G.S.1860, c. 164, § 4.
P.S.1882, c. 206, § 4.
R.L.1902, c. 211, § 4.

### American Law Reports

Failure or refusal to obey police officer's order to move on, on street, as disorderly conduct. 65 ALR2d 1152.

What constitutes offense of unlawful assembly. 71 ALR2d 875.

Participation of student in demonstration on or near campus as warranting imposition of criminal liability for breach of peace, disorderly conduct, trespass, unlawful assembly, or similar offense. 32 ALR3d 551.

What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.

Tort liability of college, university, fraternity, or sorority for injury or death of member or prospective member by hazing or initiation activity. 68 ALR4th 228.

### Law Review and Journal Commentaries

Regulation of demonstrations. (1967) 80 Harv.L.Rev. 1773.

Riot control and the fourth amendment. (1968) 81 Harv.L.Rev. 625.

Riot law. Jonathan Taylor, Jr. (1901) 13 Green Bag 379.

### Library References

Riot ⟹9.

WESTLAW Topic No. 341.





C.J.S. Riot §§ 29 to 32.

1 Proof of Cases in Massachusetts § 931.

**Texts and Treatises**

54 Am Jur 2d, Mobs and Riots §§ 1 to 3, 6.

18 Am Jur Pl & Pr Forms (Rev), Mobs and Riots, Forms 16 to 22.

## § 5. Armed forces obeying orders for suppressing riot and dispersing and arresting persons

When an armed force, called out under chapter thirty-three to suppress a tumult or riot, or to disperse a body of men acting together by force and with intent to commit a felony, or to offer violence to persons or property, or with intent by force or violence to resist or oppose the execution of the laws of the commonwealth, arrives at the place of such unlawful, riotous or tumultuous assembly, its members shall obey such orders for suppressing the riot or tumult, and for dispersing and arresting all persons who are committing any of said offences, as they have received from the governor, or a judge of a court of record, or the sheriff of the county, and also such orders as they there receive from any two of the magistrates or officers before mentioned.

### Historical and Statutory Notes

R.S.1836, c. 129, § 5.
G.S.1860, c. 164, § 5.
P.S.1882, c. 206, § 5.
R.L.1902, c. 211, § 5.

### Law Review and Journal Commentaries

Regulation of demonstrations. (1967) 80 Harv.L.Rev. 1773.

Riot control and the fourth amendment. (1968) 81 Harv.L.Rev. 625.

Riot control and the use of federal troops. (1968) 81 Harv.L.Rev. 638.

Riot law. Jonathan Taylor, Jr. (1901) 13 Green Bag 379.

### Library References

Riot ⟹9.
WESTLAW Topic No. 341.
C.J.S. Riot §§ 29 to 32.

**Texts and Treatises**

53 Am Jur 2d, Military, and Civil Defense §§ 3, 32.

### Notes of Decisions

Armed forces 1

**1. Armed forces**

In cases of threatened or existing rioting, the selectmen of a town, the mayor of a city or the sheriff of a county could issue a precept under the provisions of St.1908, c. 604, §§ 142 to 150, directed to any commander of a brigade, regiment, battalion, corps of cadets, or company within his or their jurisdiction, requiring such commander to appear and aid the civil authority in suppressing violence and supporting the laws, the issuance of such precept being governed by exercise of the sound discretion, good judgment and honesty of purpose of the sheriff or other local officer or officers in determining as a matter of fact whether or not the local police would be able to cope with the existing or threatened situation. 3 Op.Atty.Gen. 1912, c. 515.

Where there was imminent, impending danger of a riot or other breach of the peace, the sheriff could call such aid as a man of ordinary prudence in such a situation might deem necessary to quell such riot or disturbance; or where a tumult, riot or mob actually existed or was threatened he could, under St.1908, c. 604, § 142, issue a precept directing any commander of a brigade, regiment, battalion, corps of cadets or company within his jurisdiction "to appear at time and place therein specified, to aid the civil authority in suppressing such violence

Case 3:04-cv-30004-MAP Document 3-2 Filed 01/07/2004 Page 7 of 16

6/15
3



Since an indictment for a riot must charge an unlawful assembling together by three or more persons, an indictment cannot be sustained which charges that the 5 defendants, together with others, to the number of 12 or more, at a specified time and place, with force and arms, viz., with clubs, etc., a certain building there situate, called the Union Hall, the property of one T.E.F., in the nighttime, unlawfully, riotously, and routously did attack and beset, and did then and there unlawfully, etc., make a great noise, disturbance, and affray, and did, unlawfully, etc., continue near and about such building, making such noise, etc., for the space of one hour, and the doors and windows of said building did then and there unlawfully, etc., with the weapons aforesaid, break, destroy, and demolish, to the damage of the said T.E.F., etc. Com. v. Gibney (1861) 84 Mass. 150, 2 Allen 150.

An indictment for a riot must charge an unlawful assembling together by the defendants. Com. v. Gibney (1861) 84 Mass. 150, 2 Allen 150.

An indictment against three for a riot is supported on the separate trial of one by proof of a riot in which he and any two other persons joined. Com. v. Berry (1855) 71 Mass. 93, 5 Gray 93.

In an indictment for a riot, it is sufficient to allege that the defendants assembled "with force and arms," and, being so assembled, committed acts of violence, without repeating the words "force and arms." Com. v. Runnels (1813) 10 Mass. 518, 6 Am.Dec. 148.

If an indictment for riot alleges that an unlawful act has been committed, the words "in terrorem populi" are not necessary; they being required only when the gist of the offense consists in the terror of the public inspired by the conduct of the parties. Com. v. Runnels (1813) 10 Mass. 518, 6 Am.Dec. 148.

### 4. Evidence

In a prosecution of certain socialist street paraders without permit, for a riot in course of which a police officer was stabbed, defendants' request for ruling that there was no evidence to justify finding that officer was stabbed with a knife was properly refused, though there was no direct evidence that stab was so caused; the allegation of assault being merely incidental to the charge of riot. Commonwealth v. Frishman (1920) 126 N.E. 838, 235 Mass. 449.

## § 2. Refusing or neglecting to depart or to assist in suppressing assembly or in arresting persons

× Whoever, being present and being so commanded to assist in arresting such rioters or persons so unlawfully assembled, or in suppressing such riot or unlawful assembly, refuses or neglects to obey such command, or, if required by such magistrate or officer to depart from the place, refuses or neglects so to do, shall be considered one of the rioters or persons unlawfully assembled, and shall be punished by imprisonment for not more than one year or by a fine of not less than one hundred dollars or more than five hundred dollars, or both.

Amended by St.1965, c. 647, § 1A.

### Historical and Statutory Notes

St.1786, c. 38, § 2.
St.1835, c. 140, § 1.
R.S.1836, c. 129, § 2.
G.S.1860, c. 164, § 2.
P.S.1882, c. 206, § 2.
R.L.1902, c. 211, § 2.

St.1965, c. 647, § 1A, substituted "shall be punished by imprisonment for not more than one year or by a fine of not less than one hundred dollars or more than one year or by a fine of not less than one hundred dollars or more than five hundred dollars, or both" for "may be prosecuted and punished accordingly".

St.1965, c. 647, was approved Aug. 19, 1965. Emergency declaration by the Governor was filed Aug. 20, 1965.

### Cross References

Curfews, see c. 40, § 37A.

#6

× October 15,16,17 1969 Spfld. Mass. Petit Trial Jury panel. (whoever)





### American Law Reports

Failure or refusal to obey police officer's order to move on, on street, as disorderly conduct. 65 ALR2d 1152.
What constitutes offense of unlawful assembly. 71 ALR2d 875.
Participation of student in demonstration on or near campus as warranting imposition of criminal liability for breach of peace, disorderly conduct, trespass, unlawful assembly, or similar offense. 32 ALR3d 551.
What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.
Tort liability of college, university, fraternity, or sorority for injury or death of member or prospective member by hazing or initiation activity. 68 ALR4th 228.

### Law Review and Journal Commentaries

Regulation of demonstrations. (1967) 80 Harv.L.Rev. 1773.
Riot control and the fourth amendment. (1968) Harv.L.Rev. 625.
Riot law. Jonathan Taylor, Jr. (1901) 13 Green Bag 379.

### Library References

Riot ⊂=1, 9.
Unlawful Assembly ⊂=1.
WESTLAW Topic Nos. 341, 396.
C.J.S. Riot §§ 1 to 11, 29 to 32.
C.J.S. Unlawful Assembly §§ 1 to 3, 7.

**Texts and Treatises**

54 Am Jur 2d, Mobs and Riots §§ 1 to 3, 6.
18 Am Jur Pl & Pr Forms (Rev), Mobs and Riots, Forms 16 to 22.
1 Proof of Cases in Massachusetts § 931.

## § 3. Neglect or refusal to exercise authority to suppress assembly

A mayor, alderman, selectman, justice of the peace, sheriff or deputy sheriff who, having notice of any such riotous or tumultuous and unlawful assembly in the city or town where he lives, neglects or refuses immediately to proceed to the place of such assembly, or as near thereto as he can with safety, or omits or neglects to exercise the authority conferred upon him by this chapter for suppressing such assembly and for arresting the offenders, shall be punished by a fine of not more than three hundred dollars.

### Historical and Statutory Notes

St.1835, c. 140, § 2.
R.S.1836, c. 129, § 3.
G.S.1860, c. 164, § 3.
P.S.1882, c. 206, § 3.
R.L.1902, c. 211, § 3.

### American Law Reports

Failure or refusal to obey police officer's order to move on, on street, as disorderly conduct. 65 ALR2d 1152.
What constitutes offense of unlawful assembly. 71 ALR2d 875.
Participation of student in demonstration on or near campus as warranting imposition of criminal liability for breach of peace, disorderly conduct, trespass, unlawful assembly, or similar offense. 32 ALR3d 551.
What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.
Tort liability of college, university, fraternity, or sorority for injury or death of member or prospective member by hazing or initiation activity. 68 ALR4th 228.

# Commonwealth of Massachusetts

#7

HAMPDEN , ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION

No. 03-694

A True Copy Attest
Deputy Sheriff 7/18/03

COMMONWEALTH OF MASSACHUSETTS, Plaintiff(s)

v.

KENNETH JACKSON, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon William M. Bennett, District Attorney for the County of Hampden, plaintiff's attorney, whose address is Hall of Justice, Springfield, Massachusetts 01103 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Springfield either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the ~~complaint for~~ petition for the commitment of defendant, a sexually dangerous person, & A temporary detention ~~a preliminary order to secure and hold~~ and that a hearing upon such application will be held at the court house at said Springfield in the A session without jury of our said court on Friday the 18th day of July A.D. ~~19~~2003 at 2:00 o'clock PM, at which you may appear and show cause why such application should not be granted.

SUZANNE V. DelVECCHIO, ESQUIRE

Witness, [redacted] Esquire, at Springfield the 16th day of July in the year of our Lord ~~one thousand nine hundred and ninety-~~ Two-Thousand Three.

Clerk/Magistrate

*NOTES.*

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

Form No. 4 A

#8

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT
SUPERIOR COURT DEPARTMENT

HAMPDEN, ss. CIVIL NO.

COMMONWEALTH OF MASSACHUSETTS,
Plaintiff

v.

KENNETH JACKSON,
Defendant

**COMMONWEALTH'S G.L. c.123A, §12 PETITION FOR THE COMMITMENT OF DEFENDANT, A SEXUALLY DANGEROUS PERSON, & A TEMPORARY DETENTION PENDING HEARING**

**I. PARTIES**

1. The plaintiff is William M. Bennett, District Attorney for the Hampden District, Commonwealth of Massachusetts (hereinafter "Commonwealth").

2. The defendant is Kenneth Jackson (hereinafter "defendant"), D.O.B. January 31, 1936, a person currently incarcerated in the Massachusetts Correctional Institution at Norfolk, on 1972 convictions for kidnapping (G.L. c.265, §26), assault and battery by means of a dangerous weapon, to wit: a knife (G.L. c.265, §), and rape (G.L. c.265, §22) arising out of the Hampden County Superior Court (Indictment Nos. 22784, 22785, & 22786)(Attachments A, C). On November 21, 1972, the defendant was sentenced to seven-to-ten-year terms of incarceration in the state prison for the kidnapping and assault and battery by means of a dangerous weapon convictions, and he was sentenced to a sixteen-to-twenty-five-year term of incarceration in the state prison for the rape conviction, to run from and after a ten-to-twelve-year state prison sentenced imposed on him on October 17, 1969, for the offense of rape (Attachment A). The rape for which the defendant was sentenced on November 21, 1972, was committed on August 21, 1969, in Palmer, Massachusetts (Attachment C). The rape for which the defendant was sentenced on October 17, 1969, was

committed on September 9, 1969, in Palmer, Massachusetts (Attachments A, D, E). The Commonwealth has been notified that the defendant is scheduled to be released from his sentence of incarceration on July 30, 2003 (Attachment F).

## II. JURISDICTION

This petition is brought under the provisions of G.L. c.123A, §§1, 12-16, which was signed into law on September 10, 1999.

## III. ALLEGATIONS

By petition, the Commonwealth alleges that the defendant is a sexually dangerous person as defined in G.L. c.123A, §1 and is likely to engage in sexual offenses if he is not confined to a secure facility. The evidence of the defendant's sexual dangerousness includes the following:

1. **Defendant's Governing Offenses:** The defendant has been convicted of kidnapping, assault and battery by means of a dangerous weapon, and rape on November 21, 1972 (Attachments A, C). The defendant previously was convicted of rape on October 17, 1969 (Attachments A, D, E). The defendant's sentence for rape imposed in 1972 was ordered to run from and after the sentence for rape imposed in 1969.

On August 21, 1969, the defendant picked up the victim, a hitchhiker, at the Copley Square, Boston, entrance to the Massachusetts Turnpike, drove west on the turnpike to exit 8 in Palmer, Massachusetts, drove onto a side road, bound and blindfolded the victim, and raped her at knifepoint (Attachment C). That criminal episode is the basis of his November 21, 1972, conviction.

On September 9, 1969, less than three weeks after the previous rape, the defendant again picked up two female hitchhikers in Boston, near an entrance to the turnpike, and asked one of the women to drive his car. He told the women that he was involved in the drug trade and had to make a delivery in palmer. He directed the driver to exit the turnpike in Palmer, and he told her to drive onto a "little used" road. The driver gave the defendant the car keys at his request. The defendant

then grabbed the female passenger, while he held a knife on the female driver. The defendant had difficulty attempting to undress the driver. The passenger disrobed on his order. The defendant told the women that he had a "sex habit". The passenger told him that she had a venereal disease. The defendant did not sexually assault the passenger. He penetrated the driver from the rear (Attachments D & E).

2. **Defendant's Criminal History:** On November 18, 1960, the defendant was convicted of assault with intent to rape in the State of Connecticut and received a five-to-ten-year sentence (Attachments A, B, K). The defendant served five years and two months of that sentence. On June 5, 1960, while two seventeen-year-olds were parked on a street in Hamden, Connecticut, the defendant opened the door to their motor vehicle. He held a flashlight in one hand and a large knife in the other. The defendant's face was partially covered. He ordered both teenagers into the rear seat, where he blindfolded and bound them. The defendant then drove the car. At some point, he ordered the male victim out of the automobile, brought him to a fence, and tied him to the fence. The defendant entered the back seat of the motor vehicle and told the female victim that he was going to have sexual relations with her. When she cried and screamed, he put his hand over her mouth. The female victim managed to leave the car, but she fell to the ground. The defendant grabbed her and struck her several times in the abdomen. He tried to drag her into the automobile. The defendant then told her that, if she returned to the car, he would retrieve the male victim. The female complied. When the defendant began to drive away without getting the male victim, the female again began to scream. The defendant removed her from the motor vehicle and began to run down the road, holding her by the arm. He let her go, returned to the automobile, and stole her pocketbook. The defendant admitted that he intended to rape the female victim (Attachment K).

On September 4, 1958, the defendant was convicted of assault with intent to rape in the State of New Jersey and received a five-to-ten-year sentence (Attachment A). The defendant served twenty-five days of that sentence.

3. **Defendant's Institutional Information:** The defendant's institutional information discloses that the

#11

42.

11

defendant was committed to the Massachusetts Treatment Center at Bridgewater on five occasions during his incarceration. Two psychiatrists found that defendant was a sexually dangerous person in 1973 by, but they was deemed him "untreatable" (Attachment J).

The defendant has refused to undergo sexual offender treatment (Attachments F & G).

4. **Other Pertinent Information:** Recently, the Commonwealth transferred the documents contained in Attachments A-L to Katrin Rouse-Weir, Ed.D., a qualified examiner. Doctor Rouse-Weir is a licensed clinical psychologist and designated forensic psychologist who has been qualified in the courts of the Commonwealth in the past to render an opinion in the field of psychology, and, more particularly, sexual dangerousness. Doctor Rouse-Weir is familiar with the statutory definition of "sexual dangerous person" as it presently exists. Doctor Rouse-Weir submitted a written evaluation of the defendant on June 21, 2003 (Attachment M). Doctor Rouse-Weir concluded that the defendant suffers from schizophrenia, but, due to his age and the lack of sexually aggressive delusions, he does not meet the criteria for a sexually dangerous person as that term is presently defined in G.L. c.123A, §1 (Attachment M).

Recently, the Commonwealth transferred the documents contained in Attachments A-L to Carol G. Feldman, Ph.D., J.D., a qualified examiner. Doctor Feldman is a licensed clinical psychologist and designated forensic psychologist who has been qualified in the courts of the Commonwealth in the past to render an opinion in the field of forensic psychology and, more particularly, sexual dangerousness. Doctor Feldman is familiar with the statutory definition of "sexually dangerous person" as it presently exists. On information and belief, after review of the documents submitted to her by the Commonwealth (Attachments A-L), it is the opinion of Doctor Feldman, to a reasonable degree of professional certainty, that the defendant presently suffers from a Personality Disorder, namely, Personality Disorder Not Otherwise Specified (DSM-IV-TR) and results in an inability to control his sexual impulses, behavior that makes him likely to engage in sexual offenses if he is not confined to a secure facility (Attachment N). If called to testify at a probable cause hearing, G.L.

#12

47
12

c.123A, §12(c), Doctor Feldman would opine that the defendant meets the criteria for a sexually dangerous person as that term is presently defined in G.L. c.123A, §1 (Attachment N).

## IV. SUMMARY

The crimes for which the defendant was convicted and is presently committed, as well as his criminal history, demonstrate a pattern of repetitive and compulsive deviant behavior, manifesting itself in violent sexual assaults upon adult women, using a knife. This behavior, combined with the defendant's diagnosed personality disorder, and his refusal to undergo treatment as a sex offender, puts him at risk to reoffend. Based on the foregoing, the defendant is a sexually dangerous person as the term is defined in G.L. c.123A, §1, rendering him a menace to the health and safety of the citizens of the Commonwealth.

## V. RELIEF SOUGHT

The Commonwealth seeks the following relief:

1. A short order of notice returnable for July 18, 2003;

2. A writ of habeas corpus for the defendant's appearance in the Hampden County Superior Court on July 18, 2003, to allow for service of this complaint and appointment of counsel;

3. An order committing the defendant to the Massachusetts Treatment Center pending disposition of this petition, G.L. c.123A, §12(e), as the defendant is scheduled to be released by the Massachusetts Department of Correction on July 30, 2003;

4. A hearing to determine whether there is probable cause to believe that the defendant is a sexually dangerous person. G.L. c.123A, §12(c);

5. An examination of the defendant by two qualified examiners pursuant to G.L. c.123A;

6. A trial by jury on the merits of the petition;

#13

13

7. A finding that the defendant is a sexually dangerous person as that term is defined in G.L. c.123A, §1;

8. A commitment of the defendant to the Massachusetts Treatment Center for an indeterminate period of a minimum of one day and a maximum of his natural life; and

9. Pursuant to G.L. c.265, §24C, an order that so much of the pleadings and exhibits contain the name or other identifying information of the victims be withheld from public inspection.

July 14, 2003

Respectfully submitted
THE COMMONWEALTH,
WILLIAM M. BENNETT
District Attorney For The
Hampden District

KATHERINE E. McMAHON
Assistant District Attorney
For The Hampden District
BBO No. 338410
Hall Of Justice
50 State Street
Springfield, MA 01102
(413) 452-1100

45
14

#14

ATTACHMENTS

| | |
|---|---|
| Defendant's CORI Materials | A |
| State Of Connecticut Criminal Record Certification Letter | B |
| Commonwealth v. Jackson, 3 Mass. App. Ct. 511 (1975) | C |
| Commonwealth v. Jackson, 3 Mass. App. Ct. 288 (1975) | D |
| The Commonwealth Of Massachusetts Executive Office Of Public Safety Department Of Correction, Massachusetts Correctional Institution, Norfolk, Summary Of 1969 Offense | E |
| The Commonwealth Of Massachusetts Department Of Correction, Community Corrections, Sex Offender Unit Materials Dated 12/17/02 | F |
| The Commonwealth Of Massachusetts, Department Of Correction, Classification Form Dated 9/13/02 | G |
| The Commonwealth Of Massachusetts, Department Of Correction, Disciplinary Reports | H |
| Spectrum Health Systems, Inc., Transition Planning Services Transition Plan Summary | I |
| Massachusetts Treatment Center At Bridgewater Materials | J |
| Connecticut State Prison Materials | K |
| Commonwealth Of Massachusetts Probation Department Materials | L |
| Evaluation By Katrin Rouse-Weir, Ed.D. | M |
| Affidavit Of Carol G. Feldman, Ph.D. J.D. | N |

#15



46.
15

**ATTACHMENTS**

| | |
|---|---|
| Defendant's CORI Materials | A |
| State Of Connecticut Criminal Record Certification Letter | B |
| Commonwealth v. Jackson, 3 Mass. App. Ct. 511 (1975) | C |
| Commonwealth v. Jackson, 3 Mass. App. Ct. 288 (1975) | D |
| The Commonwealth Of Massachusetts Executive Office Of Public Safety Department Of Correction, Massachusetts Correctional Institution, Norfolk, Summary Of 1969 Offense | E |
| The Commonwealth Of Massachusetts Department Of Correction, Community Corrections, Sex Offender Unit Materials Dated 12/17/02 | F |
| The Commonwealth Of Massachusetts, Department Of Correction, Classification Form Dated 9/13/02 | G |
| The Commonwealth Of Massachusetts, Department Of Correction, Disciplinary Reports | H |
| Spectrum Health Systems, Inc., Transition Planning Services Transition Plan Summary | I |
| Massachusetts Treatment Center At Bridgewater Materials | J |
| Connecticut State Prison Materials | K |
| Commonwealth Of Massachusetts Probation Department Materials | L |
| Evaluation By Katrin Rouse-Weir, Ed.D. | M |
| Affidavit Of Carol G. Feldman, Ph.D., J.D. | N |